**Jacob BROCK and Max Brock, a copartnership doing business under the name and style of American Character Doll Co.**

**v.**

**Leonard J. BROWN and Paul M. Brown, doing business under the name and style of Baltimore Products Co.**

Civ. No. 7725.

United States District Court
D. Maryland, Civil Division.

Feb. 3, 1956.
Supplemental Opinion Feb. 29, 1956.

Richard W. Emory and Venable, Baetjer & Howard, Baltimore, Md., and Albert J. Clark, Thomas J. Byrne, Jr., Drury W. Cooper, Jr., and Robert S. Dunham, New York City, for plaintiffs.

Nyburg, Goldman & Walter and Raphael Walter, Baltimore, Md., and Asher Blum, New York City, for defendants.

THOMSEN, Chief Judge.

United States Patent No. 2,675,644, for a "weeping doll" was issued on April 20, 1954, to plaintiffs as assignees of the applicants, Senior et al. Defendants, who are Baltimore toy dealers, purchased the accused doll from its manufacturer, Ideal Toy Corporation, of New York, which has assumed control of the defense of this suit and has raised the usual questions of validity and infringement.

The doll market is avid for novelties, especially dolls which simulate natural functions of a human baby. For many years there has been a demand for a weeping doll. Hoeffler and Hogan obtained patents for dolls in which the head is a hollow bulb to contain liquid, with slits for eyes, so that the liquid may run out of the slits. Konikoff obtained a patent for a doll in which liquid runs by gravity from a container to openings in the eyes if the doll is held in a certain position. Schachne obtained a German patent, Pages a French patent, and Gilbraith a United States patent for dolls in which a bulb, placed in the buttocks or back of the doll, may be directly squeezed or pressed with a lever to force liquid out of the eyes, after the manner of a syringe or water pistol. None of these dolls was a commercial success, principally because it was difficult for a child to control the amount of pressure applied, and the water tended to gush out of the eyes in a stream rather than in drops. The prior art also included Ideal's wetting doll, sold with diapers under the name "Betsy Wetsy", in which water is introduced through the mouth and flows out through a hole in the bottom of the body.

During the late 1940's Senior, in England, and Beebe, an employee of plaintiffs, in the United States, were working on the problem of a weeping doll. Both came up with the idea of raising the water to the eyes by an air pump, enclosed in a doll with a flexible body. Water introduced into a container through the mouth of the doll is raised to the eye openings by squeezing the flexible body at any place convenient to the child, without regard to the position of the container in the body of the doll. Since this is a relatively inefficient means of causing the water to rise to the eyes, compared with direct pressure applied to the container (bulb) itself, the water comes out of the eyes in drops.

Both Senior and Beebe filed applications in the United States Patent Office, which declared an interference to determine priority of invention. Beebe conceded priority to Senior; and since plaintiffs realized that Beebe's doll, which

plaintiffs had produced commercially in 1950, came within the scope of Senior's claims and would infringe, plaintiffs purchased Senior's patent application. Senior's application originally included only claims 1 to 6, but claims 7 and 8 were added before it matured into Senior Patent No. 2,675,644. Claim 7 had been included in the Beebe application, and was the claim with respect to which the Patent Office had declared the interference. Beebe's doll embodied several practical improvements, adapted to mass production, and Beebe Patent No. 2,689,432 issued on September 21, 1954, six months after the Senior Patent.

Dolls made according to Senior's construction have been produced commercially in England by Senior's company, but not in the United States. "Tiny Tears", plaintiffs' commercial doll, is made according to Beebe's construction, and the accused doll, manufactured by Ideal, is a copy of Beebe's doll. Since 1950 and up to October 15, 1955, plaintiffs have sold 1,720,020 weeping dolls.

In this suit plaintiffs charge infringement of claims 1, 2, 4, 7 and 8 of the Senior patent, which dominates the Beebe patent; both of these patents are now owned by plaintiffs.

Claim 1 of the Senior patent reads:

"A toy figure comprising a body, part at least of which is hollow with resilient walls, a head with a mouth opening and tear openings appropriately positioned therein, a hollow, substantially rigid container for liquid disposed in the interior of the figure, a filling tube connecting the interior of said container with said mouth opening, liquid conducting tubing connected to said tear openings and projecting downwards into said container, an air tube projecting upwards into said container and terminating, in the interior of said container, above the lower termination of said liquid conducting tubing, said air tube extending into the interior of the hollow body or body part external to the container, and means for closing said mouth opening, whereby flexure of said resilient walls is adapted to create a flow of air under pressure from the interior of the hollow body through said air tube, into the interior of the container to force liquid from this container through said liquid conducting tubing to the tear openings."

Claims 2, 4, 7 and 8 are for a toy figure constructed according to the same principles with minor variations. Whereas claim 1 calls for "means for closing said mouth opening", claim 2 calls for "a removable member for sealing said mouth". Claim 4 calls for adding "a liquid discharge orifice at a location above the lowest point in the hollow interior" so that the doll may be a wetting as well as a weeping doll. Claims 7 and 8 are broader, i. e. less detailed, than claims 1 and 2.[1]

---

1. Claims 2, 4, 7 and 8 read as follows:

"2. A toy figure comprising a body, part at least of which is hollow with resilient walls, a head with a mouth opening and tear openings appropriately positioned therein, a hollow, substantially rigid container for liquid disposed in the interior of the figure, a filling tube connecting the interior of said container with said mouth opening, and mounting said container within the figure, liquid conducting tubing connected to said tear openings, and projecting downwards into said container, an air tube projecting upwards into said container and terminating, in the interior of said container, above the lower termination of said liquid conducting tubing, said air tube extending into the interior of the hollow body or body part external to the container, and a removable member for sealing said mouth opening, whereby flexure of said resilient walls is adapted to create a flow of air under pressure."

"4. A toy figure according to claim 1, wherein the body is formed with a liquid discharge orifice at a location above the lowest point in the hollow interior thereof."

"7. In a doll, a hollow doll body including a head having eyes and a mouth opening and a resilient torso, a liquid receiving container located in said body, a conduit leading from said mouth opening and opening into said container for supplying the container with liquid fed

The principle of raising liquid from within a closed container by creating air pressure above the liquid in the container has been known for a long time. Patents have been granted for various devices embodying this principle; e. g. Severson Patent No. 2,105,957 (1938) and Robertshaw Patent No. 2,156,606 (1939), both of which were for variants of the well-known wash bottle, wherein a closed container with a tube leading from near the bottom thereof has provision for the development of pressure within that container and above a liquid to force liquid through the tube and so out of the container.

Plaintiffs contend and ask for findings of fact that the arrangement of the elements of the air lifting device of the Senior patent is new with Senior; that the pressure developing element as entirely enclosing the liquid container is new with Senior; and that the providing of an air conductor or tube serving both to supply air pressure to the container and to provide an overflow for liquid within the container is new with Senior. There is no affirmative evidence that these proposed findings are true, and no evidence that they are false. Based solely upon the prior art patents cited by defendants at the trial, I find that enclosing the liquid container entirely within the pressure developing element, in this case the doll's body, is a new development in air pumps. So is the use of a tube which serves both to supply air pressure to the container and to provide a means of overflow for liquid in the container.

Plaintiffs contend that the invention embodied in claims 1, 2, 4, 7 and 8 of Senior Patent No. 2,675,644 is the combination for the first time within the resilient body of a toy figure or doll of a substantially rigid container for liquid, with a filling tube from the mouth to the container, conducting tubing connected with tear openings at the eyes and projecting downwards into the container, and an air tube projecting into the container from the interior of the doll's body and terminating above the lower termination of the conducting tubing leading to the eyes; so that when the resilient body of the toy figure or doll is squeezed, an increase in air pressure is transmitted into the container by the air tube and liquid in the container is thereby lifted through the conducting tubing to the eyes, where it is emitted as drops or tears; and wherein said air tube also serves as an overflow for liquid within the container.

 It has long been recognized as "a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention". Webster Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177. A combi-

through the mouth opening, an overflow conduit connected with the container with the inner end thereof located above the bottom wall of the container for discharging the liquid from the container above the level of the inner end thereof, conduit means connected with the head and extending from openings adjacent the eyes with the lower ends of said conduit means extending into said container and terminating below the inner end of said overflow conduit for discharging liquid from the container through said last mentioned conduit means and through the openings adjacent the eyes by compression of the torso for supplying air pressure to the top of the liquid in the container when the mouth opening is closed, and means for insertion in the mouth opening to close the same."

"8. In a doll, a hollow doll body including a head, having eyes and a mouth opening and a resilient torso, a liquid receiving containing located in said body, a conduit leading from said mouth opening and opening into said container for supplying the container with liquid fed through the mouth opening, an overflow conduit connected with said container with the inner end thereof disposed to permit the partial filling of said container, two conduits leading from openings adjacent the eyes and extending into said container below the inner end of said overflow conduit and means for closing the mouth opening to permit the discharge of liquid from said container through the openings at the eyes by compressing the torso of the doll."

nation "is patentable if it produces new and useful results, although all its constituents were well known and in common use before it was made, provided the results are a product of the combination, and not a mere aggregate of several results, each the product of one of the combined elements;" 40 Am.Jur. 543, Patents, sec. 19, quoted in City of Grafton, W. Va., v. Otis Elevator Co., 4 Cir., 166 F.2d 816, 817.

■ I am conscious of the admonition that "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162. But the Supreme Court in that case was careful to note: "Neither court below has made any finding that old elements which made up this device perform any additional or different function in the combination than they perform out of it." 340 U.S. at page 152, 71 S.Ct. at page 130.

The new function performed by the air pump in Senior's combination is the production of tear drops in the eyes of a doll when a child squeezes any part of the doll's resilient body. The air tube which projects into the liquid container from the body of the doll serves the dual purpose of admitting air under pressure into the container to raise the tears to the eyes, and of providing means for the overflow of any excess liquid introduced into the container through the doll's mouth. This is new in dolls. The novel result of this new combination is a doll which in the hands of a young child can produce an illusion of tears without precision of operation, a doll in which the liquid container can be rigid, and can be placed anywhere in the body, head or neck, not necessarily adjacent to a resilient wall, since the new combination does not require that the container be squeezed or reduced in volume itself to raise the water to the eyes. The prior art showed no use of an air pump to raise liquid to the eyes or any other part of a doll.

In Cusano v. Kotler, 159 F.2d 159, the Third Circuit sustained a patent for a game combining features of shuffleboard and billiards. The argument for invention is much stronger in the case at bar than in that case.

Chief Justice Hughes speaking for a unanimous Court in Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 676, 81 L.Ed. 983, said: "The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met. Hence, the burden of proving want of novelty is upon him who avers it." See also Lever Bros. Co. v. Proctor & Gamble Mfg. Co., 4 Cir., 139 F.2d 633.

■ The presumption of validity is strengthened where, as here, the principal references urged against the patent have been considered by the Patent Office.[2] Gulf Smokeless Coal Company v. Sutton, Steele & Steele, 4 Cir., 35 F.2d 433, 437; Chesapeake & O. Ry. Co. v. Kaltenbach, 4 Cir., 95 F.2d 801, 804.

■ Defendants' principal reliance in the case at bar is on Pages' French Patent No. 819,329. Pages' *déclaration* and *résumé* disclose a container which may

2. List of prior art patents cited to the Patent Office and to the Court: Group 1—United States Patents. 1,268,714, Hoefler, June 4, 1918; 2,080,439, Schaefer, May 18, 1937; 2,157,763, Konikoff et al., May 9, 1939; 2,196,912, Gilbraith, April 9, 1940; 2,229,439, Brock, Jan. 21, 1941. French Patent, 819,329, Pages, Oct. 14, 1937. British Patent. 578,606, Popper, July 4, 1946.

Group 2—German Patent. 223,397, Schachne, Aug. 1, 1909. United States Patents. 1,660,085, Elnain, Feb. 21, 1928; 2,105,957, Severson, Jan. 18, 1938; 2,111,507, Hogan, Mar. 15, 1938; 2,156,606, Robertshaw, May 2, 1939; Re.21,539, Wittmann, Aug. 20, 1940 (orig. Dec. 8, 1934); 2,230,114, Katz, Jan. 28, 1941; 2,653,411, Beltz, Sept. 29, 1953; 2,668,393, Rekettye. Feb. 9, 1954.

The first group of patents were cited by the Patent Office during the prosecution of the Senior patent, and it was issued over them.

be flexible or rigid, enclosed in a doll which may be made of rubber, celluloid, metal, cardboard, fibre, porcelain, rags, or other materials. If the container is flexible, pressure may be applied to it directly by the child's finger or by means of a lever in order to raise the liquid to the eye holes. If the container is rigid, a piston is suggested. The only drawing which accompanies Pages' patent shows a flexible container in the doll's back with a lever for pressing the container against a partition wall (paroi) which shuts the apparatus off from the rest of the body. The container is filled through a plug valve. There is no flow of air into the container from anywhere which exerts pressure on the liquid in the container to raise it to the eyes. There is no communication whatsoever between the container and the body of the doll. There is no disclosure for introducing liquid into the container through the mouth, and air compressed in the container by the inflowing water would make this difficult, if not impossible. Defendants argue that Pages' construction could be rearranged to place the flexible container in the head, and that if it were so rearranged, and if the body of the doll were flexible, a squeezing of the body of the doll would develop a pressure exerted on the outside of the container which would cause tears to appear in the eyes. Such a rearrangement, however, would not come within the claims of the Senior patent. Pages' would still show no flow of air into the container causing the liquid to rise to the eye opening. If the device could be made to work at all, it would be merely an inefficient syringe, and not an air pump. Moreover, defendants' argument based on such possible rearrangement is contrary to the rules on foreign publication laid down .in Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 555, 20 L.Ed. 33, as follows:

"Patented inventions cannot be superseded by the mere introduction of a foreign publication of the kind, though of prior date, unless the description and drawings contain and exhibit a substantial represen-

tation of the patented improvement, in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains, to make, construct and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent. Mere vague and general representations will not support such a defence, as the knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention, and to carry it into practical use. Whatever may be the particular circumstances under which the publication takes place, the account published, to be of any effect to support such a defence, must be on account of a complete and operative invention capable of being put into practical operation."

This passage was quoted in Baldwin-Southwark Corp. v. Coe, 76 U.S.App.D.C. 412, 133 F.2d 359, at page 365, and the court added: "The disclosure of a foreign publication must be so clear that it teaches the subject matter of the patent in suit without assistance from the latter."

The history of the prior art shows a continuing effort to develop a weeping doll. The only means for raising liquid to the eyes shown by the prior art are gravity, piston action, and direct pressure on the liquid container, as in a syringe or water pistol. No commercially successful weeping doll was made under any of the prior patents, and none of them discloses either the principle of the air pump as a means for raising liquid to the eyes of the doll or the combination of elements which appear in the Senior patent.

"When it is shown that a mechanical problem has persisted for some time, and men of ordinary skill in the art have failed to meet it when it is to their interest to do so, there is at least some ground for the conclusion that it was be-

yond their capacity." Watson v. Heil, 4 Cir., 192 F.2d 982, 985, citing Eibel Process Co. v. Minn., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523. See also Black & Decker v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910.

■ Senior Patent No. 2,675,644 amounts to invention, and claims 1, 2, 4, 7 and 8 are valid.

■ The basic rule for determining the issue of infringement has been stated by the Supreme Court as follows: "In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it." Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097. But the Court has also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. The Court, therefore, has developed the doctrine of equivalents, the essence of which is that one may not practice a fraud on a patent. The doctrine is based on the theory that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape". Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935. "The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results, Imhaeuser v. Buerk, 101 U.S. 647, 655, 25 L.Ed 945, although the area of equivalence may vary under the circumstances." Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856.

The doll of the Senior patent has a normally open mouth, through which liquid and air can pass in both directions. In order to get the weeping effect, the Senior patent discloses the insertion of a removable plug, such as a pacifier or nursing bottle, into the normally open mouth. If such plug is not inserted, the weeping effect cannot be obtained, but water and air can be forced out through said mouth opening, giving the effect of breathing or dribbling, or if a bubble pipe is inserted in the mouth, producing soap bubbles.

Plaintiffs' commercial doll, as a finished construction, also has a normally open mouth, which must be temporarily closed by a removable pacifier, bottle or other plug, in order to get the weeping effect.

The accused doll has a permanent one-way ball valve in its mouth opening. This valve is a "means for closing said mouth opening". It performs the same work, in the same way, and accomplishes the same result as specified by the claimed subject matter, i. e. the sealing off of the mouth opening to permit extrusion of liquid from the eye openings. The accused doll corresponds to claim 1 of the Senior patent in every particular. The use of the stop valve construction is a minor variation dictated by commercial design considerations and does not avoid infringement.

■ Defendants contend that the term "means" as used in each of the claims must be limited specifically to a "removable plug", and hence the claims are not infringed by the stop valve construction of the accused device. Claims 1, 4 and 8, however, contain no such limitation. Defendants' position requires reading into the claims details of the specification which are excluded therefrom. Claims 1, 4 and 8 do not refer to a "removable plug", but to "means for closing said mouth opening". While the claims should be construed in the light of the specification to obtain an understanding thereof, the limitations specified cannot be read into the claims. White v. Dunbar, 119 U.S. 47, 51–52, 7 S.Ct. 72, 30 L.Ed. 303; Hildreth v. Mastoras, 257 U.S. 27, 35–36, 42 S.Ct. 20, 66 L.Ed. 112.

■ Defendants attempt to support their limited construction on the ground that the accused stop valve structure does

not permit the obtaining of all the advantages recited in the Senior patent. It is true that the accused doll cannot be operated to get several of the play effects of the doll of the Senior patent. As a matter of law, however, imperfections of an infringement or the failure to enjoy the complete fruits of the invention will not negate a finding of infringement. In Telescope Cot Bed Co. v. Gold Medal Camp Furniture Mfg. Co., 2 Cir., 229 F. 1002, 1004, the Court said: "Infringement may be found, although the infringing device does not obtain the advantages of an invention to the fullest extent." In Matthews v. Allen, 4 Cir., 182 F.2d 824, at page 828, Judge Soper cited "the well established rule that one does not avoid infringement by following the teachings of a patent imperfectly or by constructing a device that does not function as well as the patented structure, so long as he appropriates the substance of the invention." See also Penfield v. Chambers Bros. Co., 6 Cir., 92 F. 630, 653; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 76 F.2d 653, 655.

■ The accused doll sold by defendants and manufactured by Ideal Toy Corporation infringes claims 1, 4, and 8 of the Senior Patent No. 2,675,644, issued to and now owned by plaintiffs.

### Supplemental Opinion

In an opinion heretofore filed in this case on February 3, 1956, I found as a fact that Ideal Toy Corporation, a New York corporation, had indemnified defendants and assumed the complete defense of this action both monetarily and by the selection of defendants' attorneys. Plaintiffs now move (a) that the judgment to be entered in this case include that finding, and (b) that this court issue an injunction against Ideal as well as against defendants, and award damages to plaintiffs against Ideal.

Attorneys for Ideal, appearing specially to contest the jurisdiction of this court to enjoin Ideal or to mention it in the judgment, oppose the motion. They are the same attorneys who were furnished by Ideal to represent defendants. They admit now, as they have admitted throughout the case, that Ideal assumed the complete defense of this action. But they take the position that Ideal was never made a party, that jurisdiction to grant an injunction is limited to the parties to the action, that Ideal sued the plaintiffs herein in the Southern District of New York in September, 1954, that the plaintiffs herein filed the usual counterclaim in the New York suit, which is now pending, and that "the judgment herein against the parties defendant. (Baltimore Products Co.) may be an estoppel against Ideal in the New York suit, but this estoppel must be pleaded and proved in the Southern District of New York".

In E. I. Du Pont de Nemours & Co. v. Sylvania Industrial Corp., 4 Cir., 122 F. 2d 400, the Court, speaking through Judge Soper, said:

"The binding force of the judgment of a court upon a person not named as a party to the suit, but actually in control thereof to the knowledge of the other side, has been frequently described in the decisions of the federal courts. The underlying principle is succinctly stated in Souffront v. La Compagnie Des Sucreries, 217 U.S. 475, 486, 487, 30 S.Ct. 608, 612, 54 L.Ed. 846, as follows: 'The persons for whose benefit, to the knowledge of the court and of all the parties to the record, litigation is being conducted, cannot, in a legal sense, be said to be strangers to the cause. The case is within the principle that one who prosecutes or defends a suit in the name of another, to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment, and as fully entitled to avail himself of it, as an estoppel against an adverse party, as he would be if he had been a party to the record. Lovejoy v. Murray, 3 Wall. 1, 18 L.Ed. 129.'

"The Circuit Courts of Appeals have applied this principle, especially in cases in which the manufacturer of an article alleged to infringe a patent has undertaken to defend a customer when sued for infringement. It has been quite generally held that while mere assistance in the defense of a case is insufficient to bind a person not joined as a party, participation in the trial and control of the litigation, openly avowed by the participant or at least known to the other side, will bind the participant as fully as if he had been a party to the record. The rule is sound and just since it recognizes the real parties to the suit, and applies the established principles of mutuality and finality that characterize the estoppel of a judgment." 122 F.2d at pages 404–405.

In Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 116 F.2d 845, Thermoco, a dealer, was sued for patent infringement. The district court stated, 34 F.Supp. 403, in one of its findings, that the defense of the action had been openly and avowedly conducted by Perfex Radiatory Company, the manufacturer of a part of the accused apparatus, and its wholly owned subsidiary, Perfex Control Company, to the knowledge of the plaintiffs. The district court dismissed the action as to two of the patents in issue. The plaintiffs appealed from the finding as to the relation between the dealer-defendant and the Perfex Companies. The majority, speaking through Judge Learned Hand, [116 F.2d 846] noted that the plaintiffs were "appealing to be rid of what on its face would be a valid estoppel in case they should wish to sue the Perfex Companies upon the same patents in another circuit". The court said: "It has been settled doctrine in the federal courts for at least seventy-five years that when a person not a party to the action takes over its defence, he may take advantage of the judgment if he wins, and he will be bound by it if he loses, exactly as though he were a party of record.

(Lovejoy v. Murray, 3 Wall. 1, 18, 19, 18 L.Ed. 129)." But the court continued: "A judgment should not contain findings which are not conclusive between the parties, and no finding will be conclusive unless it is necessary to the disposition of the issues. (Citing cases.) The only issues raised until this motion was made were whether the defendant, Thermoco, had sold or used the apparatus, whether the apparatus infringed the patents, and whether the patents were valid. Obviously it was not necessary to the decision of any of these issues to decide who was defending the action." The court recognized that "the authorities are somewhat ambiguous", and indeed they are. They are discussed by Judge Hand in the majority opinion and by Judge Clark in his dissent. The majority held that the fact that the manufacturer had defended the action should be deleted from the judgment. Judge Clark, dissenting, said:

" * * * The unquestioned law is that on the facts here assumed (and proved, in my opinion) the judgment herein is forever binding both for and against the Perfex Companies who actually conducted the defense. See cases collected in S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978, 989; Doherty Research Co. v. Universal Oil Products Co., 7 Cir., 107 F.2d 548. Unless the judgment, however, contains a statement of this fact, its extent will always be uncertain until proof thereof is ultimately made in each new action as brought. In other words, further litigation—in form unadjudicated, in actual fact barred—is stimulated. The time to settle this issue is before all this occurs and when the evidence is most at hand, namely, when the original judgment is entered. Actually if the judgment is then made to tell what its real effect is, there will be few, if any, later attacks upon it in the guise of suits against apparent new parties. Theoretically it may still be possible for the privy

later to assert that he was not so in fact, but was adjudged so in a suit in which he did not participate; but—lacking actual fraud, which upsets any judgment—such a claim will be rare, because baseless against the facts already made available by the former action." 116 F. 2d at page 848.

Judge Clark's dissenting opinion seems more in accord with the decision of the Fourth Circuit in E. I. Du Pont de Nemours & Co. v. Sylvania Industrial Corp., supra, and with the leading case of Eagle Manufacturing Co. v. Miller, C.C., 41 F. 351, 357, affirmed 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121. The Circuit Court, Shiras and Love, JJ., said:

"* * * The complainant filed an amendment to the original bill, making the Mast & Co. Company a party defendant, but no subpoena was issued or served upon the corporation, and that company never answered the bill, nor in its own name has in entered its appearance in the case. Under the rule recognized in Lovejoy v. Murray, 3 Wall. 1 [18 L.Ed. 129], and Robbins v. [City of] Chicago, 4 Wall. 657 [18 L.Ed. 427], it is clear that the Mast & Co. Company will be as fully bound by the results of the present litigation as though the corporation was a party to the record; for it is made clear that it is the principal party in interest, being the manufacturer of the machines sold by defendants Miller, and bound by contract with them to protect them against the consequences of infringement. It has had notice of the pendency of the suit, and in fact has assumed the control and management of the defense; and therefore, under the doctrine of the cases just cited, the decree herein will in fact be binding upon the corporation. No good reason is perceived why, by apt statement in the decree, it may not be made to appear upon the face of the decree that in fact the Mast & Co. Company is bound by the results reached in the progress of the litigation in which it has been actively engaged; for that, in effect, is only stating, in set phrase, the force which the decree would in fact have as against the corporation."

In Aghnides v. Meyer's Co., D.C., 117 F.Supp. 839, Aghnides, to whom letters patent had been issued, filed an action in the Middle District of North Carolina against Meyer's Co., a department store, in which his patents were held valid and infringed. 117 F.Supp. 839. In the judgment, Judge Hayes included the following statement (see 126 F.Supp. 851):

"5. As will appear by reference to the Court's Findings of Fact, which are incorporated herein, the conduct of the case and defense thereof was in fact directed by Marshall Metal Products, Inc., who have agreed to indemnify the defendant, and to pay all the damages, costs, attorneys' fees and the like which may be incurred by defendant in this case, and that the said Marshall Metal Products, Inc., shall be bound by this Decree in all respects the same as the defendant, The Meyer's Company."

While the North Carolina action was pending, Marshall Metal Products, Inc., and Meyer's Co. instituted suit against Aghnides in the Southern District of New York. After the decision by the North Carolina court, Aghnides sought a preliminary injunction in the New York case restraining Marshall from infringing the patents. Judge Dawson, in the New York court, said:

"Since Marshall was not a party to the North Carolina action, the findings of that Court with reference to its defense of the action are not binding upon it, nor is the injunction decree which has been issued against it res adjudicata. See Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 1941, 116 F.2d 845; Alemite Mfg. Corp. v. Staff, 2 Cir., 1930, 42 F.2d 832.

"It is conceded that Marshall held the department store harmless from its fees and expenses in the North Carolina action, and that its attorney gave advice and suggestions to counsel of the department store as to the defense of the action. This, however, is not sufficient, in and of itself, to establish that it assumed the defense of the action in such way that it would be bound by the outcome." Marshall Metal Products Co. v. Aghnides, D.C., 126 F.Supp. 850, 852.

Judge Dawson stated that the issue was one of fact, that the affidavits filed by the parties left the question in doubt, and that the issue should be determined at a trial. He therefore denied the motion for a preliminary injunction.

▆ In the case at bar it is conceded that Ideal Toy Corporation assumed the complete defense of the action, both monetarily and by the selection of defendants' attorneys. I will include a statement to this effect in the judgment to be entered, so that the admitted fact may appear upon the face of the judgment.

▆ The proposed injunction and award of damages against Ideal present a different problem. Plaintiffs frankly admit that they have no precedent for such action. They refer to cases which hold that a person who seeks the aid of a court by filing a formal petition to intervene is estopped to deny the court's jurisdiction, Miller v. Pyrites Co., 4 Cir., 71 F.2d 804, certiorari denied 293 U.S. 604, 55 S.Ct. 121, 79 L.Ed. 696, and that a non-resident who files by mail a proof of claim in bankruptcy subjects himself to the jurisdiction of the court to determine an affirmative counterclaim. Columbia Foundry Co. v. Lochner, 4 Cir., 179 F.2d 630, 631, 14 A.L.R.2d 1349.

▆ But Ideal is not a party to this action, and there is grave doubt whether this court has jurisdiction to enter an injunction or to award damages against anyone who is not a party. Alemite Mfg. Corp. v. Staff, 2 Cir., 42 F.2d 832. Plaintiffs have now offered to make a formal motion that Ideal be made a party defendant. Such a motion at this time should be denied. If I am correct in my reading of the precedents, Ideal will be bound by the decision in this case on the questions of validity and infringement. E. I. DuPont de Nemours & Co. v. Sylvania Industrial Corp., supra; Eagle Mfg. Co. v. Miller, supra. A suit is now pending between plaintiffs and Ideal in the Southern District of New York, in which a proper injunction may be issued, and the amount of any damages which should be awarded against Ideal can be more conveniently determined than in this court, since both Ideal and the plaintiffs herein have their principal offices in New York. Since Ideal has objected to the jurisdiction of this court to issue an injunction or to award damages against it, it will be estopped to assert in New York that the failure of this court to enter such an injunction or to award such damages prevents the New York court from taking such action.

I will enter judgment in accordance with this opinion.