## SCULLY SIGNAL COMPANY
v.
## Harold J. OLSON and Olson Throttle Control Incorporated.
### No. 62-707.

United States District Court
D. Massachusetts.

April 2, 1963.

Robert B. Russell, Russell, Chittick & Pfund, Boston, Mass., for plaintiff.

Harold E. Cole, Boston, Mass., for defendants.

WYZANSKI, District Judge.

Pursuant to 28 U.S.C. § 1338(a), plaintiff, as assignee of Rowell's U. S. Patent No. 2,900,915, filed this action complaining that defendants had infringed it. Defendants, in addition to denying validity and infringement, prayed, by way of counterclaim that the patent be declared invalid, that defendants be declared not to have infringed, and that they recover attorneys' fees as well as costs. The corporate defendant also sought an injunction restraining plaintiff from notifying prospective customers of the alleged infringement. Despite the breadth of the pleadings, no evidence was offered with respect to claim 2 of the patent, and this Court regards any dispute with respect to it as moot.

The invention set forth in claim 1 relates to an automatic engine cut-off for pump-equipped tank-truck vehicles, such as the ordinary oil truck which delivers fuel to buildings for heating.

Originally fuel oil was delivered from trucks by simple gravity feed systems. Later, pumps were installed. At first, positive displacement pumps were used. To speed delivery of the fuel and to reduce maintenance costs, those in the trucking business wished to use, instead of positive displacement pumps, the familiar centrifugal pump, which would receive its power from the truck engine. But there were dangers of serious destruction from the use of the centrifugal pump if the operator ever accidentally

"reved up" the engine or drove away inadvertently with the power take-off engaged. The problem was to cut off the power when danger threatened, and promptly thereafter to restore the current to the engine.

Rowell devised a simple pressure-actuated switch operating a circuit in parallel with the low voltage side of the engine ignition system. At a given maximum pressure the switch closed and thereby short circuited the low voltage side of the ignition system. Rowell contemplated two modes of operation: under one (which may be ignored) the pressure sensitive switch would completely stop the engine; and under the other (which is relevant in this case) a faster switch would momentarily interrupt the engine, but, after the danger point had passed and while the engine was still rotating, would re-engage it.

Claim 1 of the Rowell patent reads as follows:

"In a vehicle for transporting and dispensing fluids having a tank and an internal combustion engine for propelling said vehicle provided with an ignition system having a pair of make and break contacts in the primary circuit thereof, the combination comprising a power take-off mechanism, a fluid pump driven by said power take-off mechanism having the inlet thereof connected to said tank and the outlet thereof connected to a fluid discharge conduit, means for selectively actuating said power take-off mechanism by said engine, a pressure sensitive switch connected to said fluid discharge conduit and actuated by the discharge pressure of said pump to close its contacts, fluid flow control means positioned in the connection between said pressure sensitive switch and said fluid discharge conduit, means for adjusting said switch to vary the pressure operating range thereof, means electrically connecting said pressure sensitive switch in parallel to said make and

break contacts, whereby during operation of said pump and predetermined continuance of a preselected pressure in said fluid discharge conduit, said pressure sensitive switch is actuated to short circuit said make and break contacts to interrupt the operation of said ignition system."

The first issue in this case is what is the meaning of this claim.

Analytically it covers a combination of 7 elements:

(1) a power take-off mechanism;

(2) a fluid pump driven by the power take-off and connected to the tank and the fluid discharge conduit;

(3) means for selectively activating the power take-off mechanism;

(4) a pressure sensitive switch connected to the fluid discharge conduit and activated by the fluid discharge pressure of the pump to close its contacts;

(5) fluid flow control means positioned in the connection between the pressure sensitive switch and the fluid discharge conduit;

(6) means for adjusting the switch to vary the pressure operating range; and

(7) means electrically connecting the pressure sensitive switch in parallel to the make and break contacts.

If, for the moment, item 5 above be disregarded, the meaning of the rest of the claim is not difficult or disputed. What it describes is an engine (element 1) which can be put on and off (element 3), which rotates a pump (element 2), such engine being governed by a switch responsive to fluid pressure (element 4), the switch being adjustable (element 6), and the switch being electrically connected in parallel with the ignition system so that it makes and breaks the contacts necessary for the engine to operate (element 7).

What is in dispute is whether the "fluid flow control means" (element 5) refers to a valve or like adjustable control or

refers to anything whatsoever which retards the rapid flow or prevents all flow of fluid from the fluid discharge conduit toward the sensitive switch.

Plaintiff's position is that a control means does not necessarily contemplate adjustable control or moving parts, but embraces any means which by friction retards a rapid flow, or prevents all flow, of fluid. Thus in the plaintiff's view it, for example, includes a "pin hole" orifice operating on viscosity friction or any other purely frictional prevention of flow. Defendants' view is that the phrase "fluid flow control means" as used in the patent contemplates some adjustability, as is indicated by the snubbing valve described in the patent specifications, (Column 4, lines 46–47).

We may assume that in ordinary lay usage and in ordinary scientific usage "control" has not necessarily the narrow connotation advocated by defendants. In lay usage a means is a "control" means if it exercises restraint, or dominates, or holds in check, or represses, even if it is quite inflexible, and not responsive to any adjustment. The scientific usage is equally broad according to Dr. Finston, plaintiff's expert. He expressly said the term did not imply "a moving part" (Tr. 122).

But the question is whether as used in claim 1 of this patent the phrase "fluid flow control means" has a connotation or interpretation narrower than would be suggested by the usual lay or scientific usage of the word "control." It is in this connection that defendants properly draw attention to the patentee's statement in his specification that "Another necessary requirement is the adjustable provision disclosed by the snubbing valve." (Column 4, lines 46–47). From this declaration that an "adjustable provision" in "the fluid flow control means" is a "necessary requirement", we can have no doubt that this patentee used, and this patent uses, the term "fluid flow control means" in claim 1 of the patent to mean "adjustable control", not mere control by inertia or friction. To ignore this restrictive usage would be to depart from the familiar rule not merely of patent law but of documentary construction that "A patent must be read as a whole." Progressive Engineering, Inc. v. Machinecraft, Inc., 1st Cir., 273 F.2d 593, 598; Lincoln Stores, Inc. v. Nashua Mfg. Co., 1st Cir., 157 F.2d 154, 159. In short, this Court construes claim 1 as including as one of its elements a "fluid flow adjustable control means." In so doing this Court does not differ from the holding in Brock v. Brown, D.Md., 138 F. Supp. 628, 635, that it is improper to narrow a broad claim by reference to a mere illustration in the specifications.

The next issue is whether, as construed, claim 1 does state a patentable invention.

Rowell admits that every one of the "individual devices used in this invention are old and well known" but he says "they have not been heretofore combined in the manner disclosed to produce the new result * * *" (Rowell patent, column 2, lines 52–54).

In connection with this claim of a new result, it is important to emphasize certain practical advantages of the invention.

First, the use of the fluid flow control means makes certain that the sensitive switch will be actuated only by sustained pressure changes and will not respond to minor fluctuations or momentary shock waves. This is of particular significance because it prevents the engine from being unnecessarily put on and off if the oil truck is passing over a bumpy road. Second, in Rowell's invention the switch is electrically connected in parallel with the low voltage line between the distributor and the coil of the ignition system. This makes sure that the cylinders of the truck will only fire when they are intended to, and that there will not be backfiring. This also avoids the increased and unpredictable resistance charges which would be the consequence of connecting the switch in series instead of in parallel, and which would augment hazards.

Rowell's device has been a commercial success. In the relatively small market of users of oil trucks his assignee sold 2500 devices embodying the claimed invention.

In challenging the validity of the Rowell patent defendants rely on patents which, while they have some of Rowell's elements do not have the whole combination of elements and are not immediately applicable to accomplish for oil truck delivery the advantages of Rowell's invention.

Hill Patent No. 865,388 concerns the control of an electrically-driven air compressor. It is in effect a throttle control device. Hill did not deal with Rowell's problem of fluid control (as distinguished from air control) to make certain that contacts were not broken by minor shock waves, or with the problem of avoiding the risks of a "series" connection. Maxson Patent No. 1,521,034, relating to compressor-controlling systems fails to anticipate Rowell for the same reasons that Hill fails. Macke Patent No. 1,774,801 and Mellert Patent No. 2,512,032 have no greater relevance.

The closest example from the prior art is Thomas Patent No. 2,400,665 providing for a control mechanism for refrigerating systems. Thomas does disclose a switch mechanism to turn off the engine if the pressure in the gas compressor becomes too great, and to allow the engine to start up when the pressure is reduced. But the Thomas combination does not disclose a fluid flow control means. Nor does it disclose a means for interrupting the ignition circuit in a series with the low tension side of the coil.

■ Giving Rowell the benefit of the appropriate presumption of validity to his patent, and not disregarding the cases which have sustained combination patents supported by a record of commercial success, I sustain Claim 1 of the patent in suit. But I am not unmindful that if it were not for the presence of the fifth element in his combination, the fluid flow control means, Rowell's patent could not be held to meet the strict standards of invention promulgated in recent cases.

The next issue is whether defendants infringed, or contributed to the infringement of, claim 1 of the Rowell patent.

Defendants' accused device is a pressure sensitive switch arranged to interrupt the operation of an oil truck engine by short-circuiting the primary circuit in parallel with the make and break contacts of that engine. That switch uses a small area piston and a high friction "O" ring in the piston so that there will not be easy access of the fluid toward or from the switch itself. The purpose of this restriction of access is to render the switch and thus the engine insensitive to momentary fluctuations of the flow of oil.

Plaintiff correctly observes that a pressure differential is required to overcome the "O" ring in the Olson device. This Court finds, in accordance with the uncontradicted testimony of plaintiff's expert, Dr. Fiston, that fluid will not flow into the pressure chamber of defendants' switch until a static pressure of 10 pounds per square inch is reached.

But in defendants' device there is no valve or other *adjustable* control which is positioned between the fluid discharge conduit and the switch.

Defendants' O-ring, which serves as a packing for the piston, is not the type of "fluid flow control means" referred to in claim 1 of the patent, as this Court construes that claim. Nor is the use by defendants of a small conduit connected to a larger one a "fluid flow control means". Those aspects of the accused structure no doubt restrict the fluid flow, but they do not in the sense of claim 1 of the patent subject it to adjustable control.

Inasmuch as there is missing from the accused device an essential element of the combination covered by Rowell's patent, there is no infringement.

Defendants' evidence does not persuade me that plaintiff had harassed any customers of the corporate defendant.

A decree will issue declaring that (1) claim 1 of U. S. Patent 2,900,915 is valid,

but not infringed by either defendant, (2) no party is entitled to relief with respect to claim 2 of the aforesaid patent, and (3) defendants' prayers for an injunction and for counsel fees are denied.