**DOUGHNUT MACH. CORPORATION v. JOE-LOWE CORPORATION et al.**

No. 3487.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Frank B. Fox, of Philadelphia, Pa., and Josiah W. Bailey, of Raleigh, N. C. (Henry N. Paul, of Philadelphia, Pa., O. B. Duckett, Jr., of Baltimore, Md., Fraley & Paul, of Philadelphia, Pa., and Adams & Hargest, of Baltimore, Md., on the brief), for appellant.

Edwin F. Samuels and Charles Markell, both of Baltimore, Md., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal in a suit brought to enjoin infringement of patent No. 1,702,191, issued February 12, 1929, on application filed by one J. C. Bergner October 13, 1919. Defendants, in addition to denying infringement, pleaded that the patent was void on grounds of anticipation and lack of invention. The judge below held that, in view of the prior art, it must be held limited to the particular mechanism described in the specification and drawings, and that, as so limited, it was not infringed by the defendants. From decree in accordance with this holding, complainant has appealed, contending that, upon a proper application of the doctrine of equivalents, infringement must be held to exist.

The machine covered by the patent is described as one "for forming pastries and the like." It is an automatic doughnut former to be used with an automatic cooking machine. It consists of an automatic feed for the dough geared to synchronize with an automatic cutter, so that, when dough is fed into a hopper, it is carried by an auger feed to the cutting device which shapes, cuts, and drops the doughnuts. Drawing VII of the patent shows the construction of the machine as follows:

FIG. VII

The operation of the machine is thus well and simply described in the brief of counsel for complainant: "The dough fills the hopper at the top of the machine resting over and around the auger-feed 3. When the cutter-disc 5 is open, the auger revolves one turn to feed a measure of dough and then another measure of dough until the orifice above the cutter-disc is filled, and the batter is extruded through the opening between sleeve and disc. When the batter is extruded, the cutter-disc moves up within the sleeve, or the sleeve moves down over the cutter-disc, so as to cut, sever and doff the annular formation. The auger 3 feeds a measure of dough when the cutting elements are open for extrusion and does not revolve during the quick movement of severing, but thereafter revolves again to feed another measure as the cutter-disc and sleeve are again opened. Both the cutter-disc and the

cutter sleeve have sharp circumferential cutting edges and they move relatively so that the disc is within the sleeve after the cutting and doffing."

All of the claims of the patent are combination claims, and complainant relies upon claims 3 to 7, inclusive. Of these, claim 6 may be taken as typical. It is as follows: "6. In a machine of the character described for producing annular formations of plastic material, the combination of die mechanism comprising an inner cutter element and an outer annular cutting die element, said elements being movable axially relative to one another, one over and off of the other, so as, on the one hand, to open and afford an annular die outlet for extrusion of the material in annular formations, and, on the other hand, to close said die outlet and sever and doff the annular formations as such; means for feeding material to the die mechanism, including a feed device with means for periodically actuating it, and for varying the amount of material fed by it at each actuation; and means for periodically actuating said die mechanism in definite correlation with the operation of said feeding means."

The machines of the defendant use practically the same cutting and doffing device as is described in the patent. Instead of the auger feed, however, they use a piston or plunger, which performs the same function as the auger feed, except that it performs same more efficiently. Like the auger feed of the patent, it is geared to synchronize in its operation with the operation of the cutter. Complainant contends that the piston or plunger feed was a recognized equivalent of the auger feed in the pastry making art, and that defendants did not avoid infringement by its adoption.

■ It appears that no commercial machines have been made with the auger feed of complainant's patent. Its own machines employ a compressed air feed; and a number of machines, developed during the ten years that the patent was pending in the Patent Office, employ feeds of various kinds with a cutter of the same general type, but none uses the auger feed. If defendant's machines are held to infringe on the application of the doctrine of equivalents, it will result that, through obtaining a patent on a mechanism which it does not use, and which has never been used commercially, complainant will be enabled to enjoin the use of useful machines developed during the long period that its patent was pending in the patent office. This, of course, is no reason for refusing any relief to which complainant is entitled; but it is a valid reason for applying strict rules of interpretation to the claims of the patent. Especially is this true where it appears, as it does here, that the claims urged before the Patent Office were amended time after time, that contentions were repeatedly renewed after being rejected, and that the patent was finally issued to cover, not the broad claims asserted, but only a combination of devices old in the art. Liberal rules of interpretation should be applied in favor of one whose inventive genius has made any real contribution to knowledge, Gulf Smokeless Coal Co. v. Sutton, Steele & Steele (C. C. A. 4th) 35 F.(2d) 433, 438, but not in favor of those who seek a monopoly on mere combinations of old devices, Wright v. Yuengling, 155 U. S. 47, 52, 15 S. Ct. 1, 39 L. Ed. 64; Piggly Wiggly Corporation v. Jitney Jungle Corporation (C. C. A.) 39 F.(2d) 592, 593; Frink, Inc., v. Erickson (D. C.) 16 F. (2d) 496.

■ We agree with the complainant that the piston or plunger feed in a machine of the character of that involved here is the mechanical equivalent of the auger feed. Both do the same thing in substantially the same way; and both at the time of the application for the patent were well known in the pastry making art as means for the mechanical feeding of pastry. For use of the screw or auger feed, see patents of Holmes 249,938, Duhrkop 518,942, Bauer 596,137, Kintner 902,088, and Robertson 1,319,534. For use of the piston or plunger feed, see patents of Holmes 174,244, Hueg 534,106, Hueg 554,273, Cote 750,609, and Baker 1,035,299. It is well settled that, while the holder of a patent covering merely a combination of old elements is entitled to invoke the doctrine of equivalents, the term "equivalent" as applied to such an invention has a signification somewhat more limited than when applied to an invention consisting of a new device or an entirely new machine. A patent embracing a combination of old ingredients covers, with respect to each, "every other ingredient which, in the same arrangement of the parts, will perform the same function, if it was well known as a proper substitute for the one described in the specification at the date of the patent." Imhaeuser v. Beurk, 101 U. S. 647, 653, 656, 25 L. Ed. 945; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp. (C. C. A. 4th) 40 F.(2d) 910, 915; Norton v. Jensen (C. C. A. 9th) 49 F. 859. But there can be no question, in the light of the disclosures of the patents to which we have referred, that the piston or plunger

feed was the equivalent of the auger feed for the mechanical feeding of pastry, even within the limits of this definition.

■ But we agree with the trial judge that, when the piston feed is held the equivalent of the auger feed, the patent is clearly invalidated under the prior art, particularly under the Baker patent, No. 1,035,299, which covers a machine for measuring and feeding plastic material and is equipped with a piston or plunger feed, and the Holmes patents, Nos. 174,244 and 220,379, which cover a plunger feed with a tubular cutter for forming cakes. And, irrespective of the equivalence of the piston feed to the auger feed, we think that the patent in suit was clearly invalid on the prior art as an attempt to patent a mere aggregation of old elements. Demco, Inc., v. Doughnut Machine Corporation (C. C. A. 4th) 62 F.(2d) 23, 26; Victor Cooler Door Co. v. Jamison Cold Storage Door Co. (C. C. A. 4th) 44 F.(2d) 288, 293; Powers-Kennedy Corp. v. Concrete Co., 282 U. S. 175, 186, 51 S. Ct. 95, 75 L. Ed. 278; Heald v. Rice, 104 U. S. 737, 755, 26 L. Ed. 910; Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241. The rule relating to the patentability of combinations is thus well stated in the oft-quoted passage from Hailes v. Van Wormer, supra:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

And the criterion for distinguishing between patentable combination and mere aggregation is thus tersely stated by Mr. Justice Brown in Richards v. Chase Elevator Company, 158 U. S. 299, 302, 15 S. Ct. 831, 833, 39 L. Ed. 991: "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements."

All that the patentee has done here is to bring together the auger feed, which, as we have already shown, was old in the art, and the circular disc cutter co-operating with a sleeve through which the plastic material is extruded, which was also old, being disclosed in the patents to Megson 573,432, Hueg 560,-719, and Williams 778,295. The synchronization of the two was a mere matter of mechanics not beyond the power of any skilled artisan. Demco, Inc., v. Doughnut Mach. Corp. supra. In the machine as thus constructed, the auger feed does exactly what it did in the old machines, i. e., feeds the plastic material forward and out of the machine; and the disc cutter does exactly what it did in the old machines, i. e., cuts the pastry into forms as it is being extruded. There could be no more invention in equipping a Megson cutter with a hopper and auger feed than there was in equipping an old return flue boiler with an old straw burning attachment, the combination held not patentable in Heald v. Rice, supra. What was said by Mr. Justice Matthews, speaking for the court in that case, is pertinent here. Said he:

"The case would not be altered if we suppose that at the date of Morey's patent there had been also a valid patent outstanding in a stranger for the return-flue boiler. On that supposition, could it for a moment be contended that Rice could secure for himself a valid patent for the combination as an improvement on both? What invention could he claim? He uses Morey's device precisely as Morey's patent contemplated, and the Cornish boiler exactly as it was designed it should be used. And in the combination each operates separately, producing its own results. There was no inventive resource drawn upon to bring them together. Could not the owners of the patents for the straw-feeding attachment and the return-flue boiler unite their machines and work them together, in defiance of a claim for the combination? To ask the question is to answer it."

Complainant contends, however, that the cutting device of the patent is novel, and that it is entitled to protection on that ground. Complainant's expert referred to the clean severing action of the disc cutter as the "fundamental and basic" characteristic of the pat-

ent in suit. But we do not think that the use as a cutting device of a disc in connection with the sleeve through which the plastic material is extruded can be said to be novel. Megson 573,432 shows such use of a disc in connection with the sleeve, as does Hueg 560,719 and Williams 778,295. In the case of Williams, the disc in cutting off the pie filler moves up within the sleeve, as does the disc in the cutting device of complainant. In the case of Megson and Hueg the cutting is effected, not as a result of the disc's passing within the sleeve, but as a result of its pressing against the end of the sleeve. It hardly rises to the dignity of invention, however, to vary the action of the disc by providing that it shall go up within the sleeve instead of pressing against the end of it. In both cases the cutting is produced by the contact of the disc with the end of the sleeve; and, if there is any mechanical superiority of the one method over the other, it is a matter within the reach of mere mechanical skill, and requires no exercise of the inventive faculty.

But the position that the cutting device is novel is not open to complainant. The record shows that on October 6, 1921, amendment was filed to the application for patent in which two claims were set up, both specifically claiming a patent on the cutting device. These claims (file wrapper 29) are as follows:

"8. In a device of the character described for producing annular formations of plastic material, the combination of a cutter element, and an annular cutting die element with cutting edge movable axially over and off of said cutter element so as, on the one hand, to open and afford an annular opening for extrusion of the material, and, on the other hand, to close and shear off the extruded material by passage of the die edge over the cutter edge.

"9. In a device of the character described for producing annular formations of plastic material, the combination of a cutter element; an annular cutting die element with cutting edge movable axially over and off of said cutter element so as, on the one hand, to open and afford an annular opening for extrusion of the material, and, on the other hand, to close and shear off the extruded material by passage of the die edge over the cutter edge; and means for shifting said die element as set forth and for concurrently rotating it."

These claims were rejected on April 3, 1922, claim 8 being rejected on Trott or Hueg 554,273, and claim 9 being rejected on Megson 573,432. They were again put forward in an amendment of April 2, 1923, being renumbered 9 and 10, and an attempt was made to distinguish them from the patents cited against them. File wrapper 52. On September 27, 1923, they were again rejected; Megson being again cited as a reason for rejecting claim 10, and Cote for rejecting claim 9. File wrapper 54. On September 25, 1924, they were again put forward, being numbered 5 and 6. File wrapper 57. On March 17, 1925, they were again rejected; 5 being rejected on Cote or Trott and 6 on Megson. The Examiner pointed out that in Megson the sleeve is moved axially over and off the die, and the mere reversal of this relative movement of the parts was not considered patentable improvement. File wrapper 59. They were slightly amended and again put forward on March 16, 1926. File wrapper 60 and 61. On June 24, 1926, they were again rejected. File wrapper 63. On February 5, 1927, they were canceled; but on April 19, 1928, application was made to amend the claims by again reinserting them. File wrapper 71 and 73 This application was denied May 1, 1928. File wrapper 78. Applicant afterwards accepted the patent containing the combination claims in suit, but omitting the claims covering the cutting device, which had been rejected so many times and finally canceled.

If complainant's contention that it is entitled to protection on account of the novelty of the cutting device is sustained, the effect will be to construe the patent as if it contained the claims which were rejected and withdrawn. This may not be done. Royer v. Coupe, 146 U. S. 524, 532, 13 S. Ct. 166, 36 L. Ed. 1073. As said by Mr. Justice Day in Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 617, 27 S. Ct. 307, 310, 51 L. Ed. 645: "It is perfectly well settled in this court by frequent decisions that where an inventor, seeking a broad claim which is rejected, in which rejection he acquiesces, substitutes therefor a narrower claim, he cannot be heard to insist that the construction of the claim allowed shall cover that which has been previously rejected." See, also, Smith v. Magic City Club, 282 U. S. 784, 789, 51 S. Ct. 291, 75 L. Ed. 707; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 S. Ct. 627, 38 L. Ed. 500; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 40, 14 S. Ct. 28, 37 L. Ed. 989; Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 29 L. Ed. 723.

And the following language of Mr. Justice Shiras in Hubbell v. United States, 179 U. S. 77, 80, 21 S. Ct. 24, 25, 45 L. Ed. 95, is peculiarly applicable here: "An examination of the history of the appellant's claim, as disclosed in the file wrapper and contents, shows

that in order to get his patent he was compelled to accept one with a narrower claim than that contained in his original application; and it is well settled that the claim as allowed must be read and interpreted with reference to the rejected claim and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices."

For the reasons stated, we think that the decree dismissing the bill was correct, and same is accordingly affirmed.

Affirmed.