**Leonard J. BROWN and Paul M. Brown, a co-partnership doing business under the name and style of Baltimore Products Co., Appellants,**

v.

**Jacob BROCK and Max Brock, a co-partnership doing business under the name and style of American Character Doll Co., Appellees.**

No. 7229.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 9, 1956.

Decided Jan. 7, 1957.

Asher Blum, New York City (Mock & Blum, New York City, on the brief), for appellants.

Drury W. Cooper, Jr., New York City (Richard W. Emory, Venable, Baetjer & Howard, Baltimore, Md., Thomas J.

Byrne, Jr., and Albert J. Clark, New York City, on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

This appeal involves a contest as to the validity and infringement of a patent on a weeping doll. From a judgment holding that claims 1, 2, 4, 7, and 8 of Senior Patent No. 2,675,644 [1] are valid and that of these claims 1, 4, and 8 were infringed, the defendant appealed. The plaintiffs are doll manufacturers and the assignees of the inventors, Senior and others. The defendants are Baltimore toy dealers and customers of Ideal Toy Corporation of New York, manufacturers of the accused doll. The District Court found that Ideal had assumed control of the defense and selected and paid the defend-

I. Claims of Patent in Suit Relied On

1. A toy figure comprising a body, part at least of which is hollow with resilient walls, a head with a mouth opening and tear openings appropriately positioned therein, a hollow, substantially rigid container for liquid disposed in the interior of the figure, a filling tube connecting the interior of said container with said mouth opening, liquid conducting tubing connected to said tear openings and projecting downwards into said container, an air tube projecting upwards into said container and terminating, in the interior of said container, above the lower termination of said liquid conducting tubing, said air tube extending into the interior of the hollow body or body part external to the container, and means for closing said mouth opening, whereby flexure of said resilient walls is adapted to create a flow of air under pressure from the interior of hollow body through said air tube, into the interior of the container to force liquid from this container through said liquid conducting tubing to the tear openings.

2. A toy figure comprising a body, part at least of which is hollow with resilient walls, a head with a mouth opening and tear openings appropriately positioned therein, a hollow, substantially rigid container for liquid disposed in the interior of the figure, a filling tube connecting the interior of said container with said mouth opening, and mounting said container within the figure, liquid conducting tubing connected to said tear openings and projecting downwards into said container, an air tube projecting upwards into said container and terminating, in the interior of said container, above the lower termination of said liquid conducting tubing, said air tube extending into the interior of the hollow body or body part external to the container, and a removable member for sealing said mouth opening, whereby flexure of said resilient walls is adapted to create a flow of air under pressure.

4. A toy figure according to claim 1, wherein the body is formed with a liquid discharge orifice at a location above the lowest point in the hollow interior thereof.

7. In a doll, a hollow doll body including a head having eyes and a mouth opening and a resilient torso, a liquid receiving container located in said body, a conduit leading from said mouth opening and opening into said container for supplying the container with liquid fed through the mouth opening, an overflow conduit connected with the container with the inner end thereof located above the bottom wall of the container for discharging the liquid from the container above the level of the inner end thereof, conduit means connected with the head and extending from openings adjacent the eyes with the lower ends of said conduit means extending into said container and terminating below the inner end of said overflow conduit for discharging liquid from the container through said last mentioned conduit means and through the openings adjacent the eyes by compression of the torso for supplying air pressure to the top of the liquid in the container when the mouth opening is closed, and means for insertion in the mouth opening to close the same.

8. In a doll, a hollow doll body including a head, having eyes and a mouth opening and a resilient torso, a liquid receiving container located in said body, a conduit leading from said mouth opening and opening into said container for supplying the container with liquid fed through the mouth opening, an overflow conduit connected with said container with the inner end thereof disposed to permit the partial filling of said container, two conduits leading from openings adjacent the eyes and extending into said container below the inner end of said overflow conduit and means for closing the mouth opening to permit the discharge of liquid from said container through the openings at the eyes by compressing the torso of the doll.

ants' lawyers. The appellants advance two contentions: first, that the patent is invalid, and second, that it has not been infringed.

Long before the patent in suit, toy manufacturers had attempted repeatedly and without success to produce a satisfactorily realistic weeping doll. A number of patents had been issued for dolls designed to meet this demand, but none of them attained commercial success because, it is said, it was difficult for a child to control the amount of pressure on the body of the doll to achieve the desired effect of teardrops instead of a gushing stream of water from the eyes.

The appellees' employee, Beebe, on September 17, 1950, applied for a United States patent on a weeping doll designed to raise water to the eyes by means of a specialized air pump structure enclosed in a hollow flexible doll body. Earlier in that year, under the trade name of "Tiny Tears," appellees had begun making and marketing a doll according to Beebe's design, and it met with quick commercial success. It has remained unchanged in design and continues popular in the trade. In a five-year period appellees have sold about one and three-quarter million of their weeping dolls.

In the preceding year, however, three Englishmen, Senior, Heusman, and Ward, had applied for a United States patent on a weeping doll of similar construction. In September, 1952, the United States Patent Office declared an interference to determine priority of invention between the simultaneously pending applications of Beebe and Senior. The issue was resolved by Beebe's conceding priority to Senior. The appellees acquired the Senior application by assignment in 1953, and the patent here in suit was issued to the assignees on April 20, 1954. The Beebe Patent, No. 2,689,432, was issued on September 21, 1954, six months after the Senior patent, upon Beebe's remaining claims. It embodies manufacturing improvements on Senior in that the water container and air pump are mounted in the head upon a partition at the upper end of the torso. The combined overflow and air tube, which is like Senior's, extends downward from about the middle of the container, through the partition, into the doll's torso.

In the drawing of the Senior patent, the container and the combined overflow and air tube are shown in the body, rather than the head; but the claims of the Senior patent are not limited to any particular placement of these elements. It is, of course, settled law that the claims, rather than the specification or drawing, control in determining the scope of a patent. Graver Tank & Manufacturing Co. v. Linde Air Products Co., 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672; Milcor Steel Co. v. George A. Fuller Co., 316 U.S. 143, 145–146, 62 S.Ct. 969, 86 L.Ed. 1332; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402.

The conflict between the parties arose in either 1952 or 1954, when the appellant stopped selling its "Betsy-Wetsy" wetting doll and began marketing a weeping doll. While conceding that its product is made according to the Beebe patent, which, like the Senior patent, is owned by appellees, the appellants make the point that the suit was not brought on the Beebe patent. As to each of the claims of the Senior patent, which dominates the Beebe patent, the appellants assert either invalidity or non-infringement or both.

The patent in suit discloses and claims a weeping doll which a child can easily manipulate by squeezing the doll's hollow, flexible body at any place convenient to the child. When the body is squeezed, the pressure of the air is transmitted by the air tube into the top of the container and liquid in the container is lifted through the conducting tube to the eyes. This simulates and gives the illusion of a weeping baby by causing water to fall like natural tears, drop by drop, and not to come out in a stream or squirt, in which case the illusion would be destroyed. The patent is a combination patent and discloses a particular struc-

ture for a weeping doll. It does not attempt broadly to cover weeping dolls of every construction; nor does it seek to cover every use of air pressure to raise a liquid, for this is an old principle. It claims merely the arrangement of the elements of an air lifting device, whereby for the first time the liquid container is entirely enclosed within the pressure developing element, that is, the doll's body, and a tube serves the double purpose of conducting air pressure to the liquid container and carrying off the overflow of liquid from the container.

The District Judge found novelty in these features in that it was a new combination and arrangement and produced new and beneficial results never attained before. A new combination providing new and unobvious results is patentable. Loom Co. v. Higgins, 105 U.S. 580, 591–592, 26 L.Ed. 1177; Colgate-Palmolive Co. v. Carter Products, Inc., 4 Cir., 230 F.2d 855, 862; United States Industrial Chemical Co. v. Theroz Co., 4 Cir., 25 F.2d 387, 391.

In reaching this conclusion, the Court compared the Senior doll with others for which patents had previously been issued. In one respect or another, each of the prior patents failed to achieve the desired result. The successful Senior doll embodied, for the first time in a doll, a liquid container that is rigid, that can be put anywhere in the doll's body, head, or neck, and need not be adjacent to a rigid wall. The distinctive feature of the combination effected by Senior is that the water container itself need not be squeezed, reduced, or collapsed. It permits, instead, pressure on any part of the doll's body to force air into the upper part of the container, which, in turn, causes the liquid to be forced upward through conducting tubes to the eyes. This is new in dolls.

In earlier patents, various other devices were resorted to. Where bulbs were used, either they had to be outside the body so that they could be readily squeezed—an obviously undesirable feature—or, if inserted into the body, they required a stiff backing or wall on the inside against which the bulb would be pressed when the doll was squeezed.

For example, in the Hoefler patent (No. 1,268,714), the head itself was the container and it was necessary, in filling the head, to attach a syringe to a tube hanging outside the back of the doll. In the Gilbraith patent (No. 2,196,912), a water container was in the head, which was fed by a bulb in the body, and the water descended by gravity to the eyes. Again, it was necessary to have a wall in the doll's body against which the bulb would be squeezed. In the Konikoff patent (No. 2,157,763), the doll had a water reservoir at the top of the head; the doll was to be laid down and fed by a bottle; and if the doll was placed upright, the water would run through a tubing into the eyes by gravity.

The prior art disclosure upon which the appellants put chief reliance is Pages, a French patent, No. 819,329. This also contained a bulb, which had to be squeezed directly by a lever to force water up into the eyes. It operated on a principle in no way resembling the patent in suit.

So much for the manifest distinctions between the mechanical operations of the Pages and Senior dolls. The appellants argued that if the Pages construction were rearranged, it would be the equivalent of the design later developed by Senior. However, not only would the rearrangement be a complete departure from Pages' patent, but there is in addition a legal rule in respect to the citation of foreign patents which completely answers such arguments. The Supreme Court has said: "Patented inventions cannot be superseded by the mere introduction of a foreign publication of the kind, though of prior date, unless the description and drawings contain and exhibit a substantial representation of the patented improvement, in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains, to make, construct and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior

patent. Mere vague and general representations will not support such a defense, as the knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention, and to carry it into practical use. Whatever may be the particular circumstances under which the publication takes place, the account published, to be of any effect to support such a defence, must be on account of a complete and operative invention capable of being put into practical operation." Seymour v. Osborne, 11 Wall. 516, 557, 78 U.S. 516, 557, 20 L.Ed. 33.

 This French patent was cited by the Patent Office against Senior, and as the Senior patent was nevertheless issued, the ordinary presumption of validity from the fact of the patent's issuance is strengthened. Chesapeake & Ohio Railway Co. v. Kaltenbach, 4 Cir., 95 F.2d 801.

Thus it will be seen that in some of the prior art patents the dolls are made to cry by pressing a certain part of the body, but in none is this result accomplished by pressing *any* part of the body, as in the Senior doll; and none utilizes the air pump principle. We need not pursue this line further, but refer to the District Court's opinion for other comparisons. We think the District Judge's conclusion well supported by the record and we agree with his findings.

Section 103 of the new Patent Act of 1952, 35 U.S.C.A. § 103, in effect holds that a patent shall not be held invalid unless the differences between the subject matter patented and the prior art are such that the subject matter as a whole would have been obvious, at the time the invention was made, to a person having ordinary skill in the art to which the subject matter pertains.

The record here shows a longfelt and unsatisfied want for an acceptable weeping doll. As we have seen, a number of devices were attempted, but none served the purpose. If any solution to the problem had been obvious, it would not have been overlooked in the industry for want of desire or effort. Notwithstanding the persistent search of the doll industry, the solution achieved by Senior did not seem obvious to anyone else until he conceived and embodied it in the patent in suit. The contention of obviousness is more readily conceived *after* the event than is the solution while the problem remains unsolved. In respect to patents, as in other concerns of life, human experience teaches that "obviousness" is often much clearer after the event than before; solutions which have remained persistently elusive leap distinctly into view after someone else has pointed them out.

 An infringer's contention that the solution was obvious is not infrequently stimulated by the commercial success of his competitor's patented product. While we recognize that commercial success alone is not the final test of invention, Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162, it is a factor which may tip the scales if the question of invention is in doubt. Even if this were a closer case than we think it is on the question of patentable novelty, the element of commercial success would be persuasive. Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 498, 58 S.Ct. 291, 82 L.Ed. 382; Smith v. Hall, 301 U.S. 216, 233, 57 S.Ct. 711, 81 L.Ed. 1049 Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997.

Seeking to minimize the Senior invention, the appellants say that "there is nothing to prevent an energetic child from using a syringe to fill the entire head and body, so that when the body is squeezed, the effect will be exactly the same as in a filled water pistol." The simple answer is that a water pistol effect was not what the customers wanted, and it is not what the appellants were content to supply them. Appellants evidently thought that their product would not sell as well if made to operate in that manner, and they installed the air pressure mechanism which gives rise to the present dispute.

Appellants also suggest that appellees' commercial success may be due less to the Senior invention than to the development of improved materials for the doll's eyes and body. These developments were available to appellants, too, but they were not willing to risk their business success upon these features; it is noteworthy that they incorporated the air pump mechanism as well.

■ The patent involved here certainly meets the standard of invention by the accepted tests, as recently explained in Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530. We agree with the District Court's holding that claims 1, 2, 4, 7, and 8 are valid.

Appellants' second contention is that claim 1 is not infringed because the accused doll does not have "means for closing the mouth opening." As to this, however, we fully agree with the finding of the District Court that [138 F.Supp. 635] "The accused doll has a permanent one-way ball valve in its mouth opening. This valve is a 'means for closing said mouth opening'. It performs the same work, in the same way, and accomplishes the same result as specified by the claimed subject matter, i. e., the sealing off of the mouth opening to permit extrusion of liquid from the eye openings. The accused doll corresponds to claim 1 of the Senior patent in every particular. The use of the stop valve construction is a minor variation dictated by commercial design considerations and does not avoid infringement.

"Defendants contend that the term 'means' as used in each of the claims must be limited specifically to a 'removable plug', and hence the claims are not infringed by the stop valve construction of the accused device. Claims 1, 4 and 8, however, contain no such limitation. Defendants' position requires reading into the claims details of the specification which are excluded therefrom. Claims 1, 4 and 8 do not refer to a 'removable plug', but to 'means for closing said mouth opening'. While the claims should be construed in the light of the specification to obtain an understanding thereof, the limitations specified cannot be read into the claims." White v. Dunbar, 119 U.S. 47, 51–52, 7 S.Ct. 72, 30 L.Ed. 303; Hildreth v. Mastoras, 257 U.S. 27, 35–36, 42 S.Ct. 20, 66 L.Ed. 112.

■ The appellants' brief contains this remarkably frank statement: "The accused doll and the plaintiff's commercial 'Tiny Tears' doll (Plaintiff's Exhibit No. 7) are concededly made according to the Beebe patent." In oral argument this concession was repeated. Appellants apparently feel they can safely make this concession of infringement on Beebe as a defense to a charge of infringement on Senior, but they overlook the relation existing between these two patents. In light of our preceding discussion, it is enough to recall that the Patent Office declared an interference and found that there was common patentable subject matter. The Senior patent is the dominant one, and Beebe's, as ultimately issued, is merely an improvement thereon. If owned separately, the holder of the Beebe patent could not copy the Senior device with impunity. Ackermans v. General Motors Corp., 4 Cir., 202 F.2d 642, 646–647.

Since the accused doll is concededly an infringement of "Tiny Tears," made in accordance with Beebe, there is no escape from the conclusion that it also infringes Senior.

For these reasons, the judgment of the District Court will be

Affirmed.