**TOY IDEAS, INC., and American Character Doll Corp.**

v.

**MONTGOMERY WARD & CO., Inc.**

Civ. No. 10428.

United States District Court
D. Maryland.

May 6, 1959.

Richard W. Emory and Venable, Baetjer & Howard, Baltimore, Md., and Thomas J. Byrne, Jr., and Keith, Bolger, Isner & Byrne, New York City, for plaintiffs.

Lawrence Perin and Semmes, Bowen & Semmes, Baltimore, Md., and Nichol M. Sandoe and Emery, Whittemore, Sandoe & Dix, New York City, for defendant.

THOMSEN, Chief Judge.

This case involves the same patent which was held valid and infringed in Brock v. Brown, D.C.D.Md., 138 F.Supp. 628, affirmed Brown v. Brock, 4 Cir., 240 F.2d 723, namely, U. S. Patent No. 2,675,644 for a "weeping doll", issued April 20, 1954, to Senior et al. Those opinions contain a discussion of the prior art and of the method of operation of the Senior device, which need not be repeated here. Judge Sobeloff summarized the invention as follows:

> "The successful Senior doll embodied, for the first time in a doll a liquid container that is rigid, that can be put anywhere in the doll's body, head, or neck, and need not be adjacent to a rigid wall. The distinctive feature of the combination effected by Senior is that the water container itself need not be squeezed, reduced, or collapsed. It permits, instead, pressure on any part of the doll's body to force air into the upper part of the container, which, in turn, causes the liquid to be forced upward through conducting tubes to the eyes. This is new in dolls." 240 F.2d at page 726.

Plaintiffs are now vested with all right, title and interest in and to the Senior patent. Uneeda Doll Co., Inc., the manufacturer of the accused dolls sold by defendant, has assumed complete control of the defense of this action. The accused dolls will be referred to herein

as defendant's old doll and defendant's new dolls No. 1 and No. 2.

Plaintiffs contend that defendant's old doll infringes Claim 1 and Claim 8 of the Senior patent, and that both types of defendant's new doll infringe Claim 8.[1] Defendant contends that its dolls do not respond literally to the terms of those claims, and that plaintiffs are barred by file wrapper estoppel from relying on the doctrine of equivalents. We will be concerned principally with (a) the eye tubing, (b) the air tube (overflow conduit), and (c) the means for closing the mouth opening.

Defendant concedes that "its dolls, both old and new, do contain certain features which are found in the patented doll. Thus, defendant's container, in each case, is rigid; it does have liquid conducting passages leading to the eyes; it does have a conduit leading to the mouth; and it does have an overflow passage through which air pressure may be communicated to the container, and through which overflow water may be discharged."

## I. Infringement

### (A) Eye tubing.

*Claim 1. Old Doll Only.* Claim 1 of the Senior Patent calls for "liquid conducting tubing connected to said tear openings and projecting downwards into said container". Defendant contends that the eye tubing in its old doll does not project *downwards* nor *into* the container.

The eye tubing in defendant's old doll follows a tortuous course. Whether it projects generally *downwards* from the tear opening to the container depends upon the position in which the doll is held. If the doll is held vertical, the general course is nearly level, but not predominantly downward. If the doll is cradled or held with its head tilted back, even slightly, the course would be downward. The important thing is that water will not flow by gravity from the container to the eye openings when the doll is held in any usual position. Even if the doll is held face down the narrowness of the tubing and its tortuous course prevents the tears from starting to flow until the doll's body is squeezed, which brings into operation the principle of the Senior invention, forcing the water from the container to the eye openings. So whether or not defendant's old doll responds literally to this term of Claim 1, its eye tubing is the equivalent of Senior's.

The eye tubing projects through the juncture of the bottom and front walls of the liquid container, and thus projects *into* such container, within the meaning of Claim 1 of the Senior patent.

1. Claims 1 and 8 of the Senior Patent:

"1. A toy figure comprising a body, part at least of which is hollow with resilient walls, a head with a mouth opening and tear openings appropriately positioned therein, a hollow, substantially rigid container for liquid disposed in the interior of the figure, a filling tube connecting the interior of said container with said mouth opening, liquid conducting tubing connected to said tear openings and projecting downwards into said container, an air tube projecting upwards into said container and terminating, in the interior of said container, above the lower termination of said liquid conducting tubing, said air tube extending into the interior of the hollow body or body part external to the container, and means for closing said mouth opening, whereby flexure of said resilient walls is adapted to create a flow of air under pressure from the interior of hollow body through said air tube, into the interior of the container to force liquid from this container through said liquid conducting tubing to the tear openings."

"8. In a doll, a hollow doll body including a head, having eyes and a mouth opening and a resilient torso, a liquid receiving container located in said body, a conduit leading from said mouth openings and opening into said container for supplying the container with liquid fed through the mouth opening, an overflow conduit connected with said container with the inner end thereof disposed to permit the partial filling of said container, two conduits leading from openings adjacent the eyes and extending into said container below the inner end of said overflow conduit and means for closing the mouth opening to permit the discharge of liquid from said container through the openings at the eyes by compressing the torso of the doll."

*Claim 8. All Dolls.* Claim 8 does not specify that the eye tubing shall project "downwards", but calls for "two conduits leading from openings adjacent the eyes and extending into said container below the inner end of said overflow conduit". In all of defendant's dolls, old and new, the eye tubing projects through the juncture of the bottom and front walls of the liquid container, at a point well below the inner end of the overflow conduit, which in each of the dolls is at or near the top of the liquid container. The construction of the eye tubing in all of defendant's dolls responds literally to this requirement of Claim 8.[2]

*(B) The Air Tube (Overflow Conduit).*

Referring to the air tube (overflow conduit), Claim 1 of the Senior Patent calls for "an air tube projecting upwards into said container and terminating, in the interior of said container, above the lower termination of said liquid conducting tubing [to the eyes], said air tube extending into the interior of the hollow body or body part external to the container". Claim 8 calls for "an overflow conduit connected with said container with the inner end thereof disposed to permit the partial filling of said container" and, as we have seen, "two conduits leading from openings adjacent the eyes and extending into said container below the inner end of said overflow conduit". Whether it be called an air tube or overflow conduit, this element has the dual function of serving as an air tube to admit air under pressure from the doll's body, and as an overflow conduit to permit the overflow of liquid from the container. In each of the three variations of the defendant's mechanism, there is an air tube (overflow conduit) which has the same dual function.

Claims 1 and 8 of the Senior patent differ in language, but they are the same in substance, because it is the relative position within the container of the termination of the air tube (overflow conduit) and the termination of the eye tubing that is significant. It is immaterial whether it be stated, as in Claim 1, that the air tube shall terminate in the container above the termination of the eye tubing, or, as in Claim 8, that the eye tubing shall terminate in the container below the inner end of the overflow conduit.

In defendant's old doll the lower part of the air tube (overflow conduit) is a rubber tube leading down into the doll's body. The upper part of the air tube (overflow conduit) is constructed of plastic material in the form of a chamber attached to the back of the liquid container (tear reservoir) and passages leading to the top of that container. In defendant's new doll No. 1 the air tube (overflow conduit) consists of two conduits or passages located in and near the top of the front wall of the liquid container (tear reservoir). In defendant's new doll No. 2 the air tube (overflow conduit) consists of one conduit or passage located in the center and near the top of the front wall of the liquid container (tear reservoir), to which (conduit or passage) is attached a rubber tube leading down into the doll's body. The air tube (overflow conduit) in defendant's old doll and in its new doll No. 2 are the same except for details of construction.

In all three constructions—defendant's old doll, defendant's new doll No. 1 and defendant's new doll No. 2—the air tube (overflow conduit) terminates in the interior of the liquid container (tear reservoir) above the termination of the eye tubing. It is this fact which permits defendant's mechanism to function. In each of the three constructions the inner end of the air tube (overflow conduit) is so disposed as to per-

---

2. Even if it did not respond literally, it is equivalent to the eye tubing specified by Claim 8, for the same reason that it is the equivalent of the eye tubing specified by Claim 1, and does not avoid infringement of Claim 8 by any of the dolls.

mit the partial filling of the container. With respect to this feature the old doll literally infringes Claim 1, and all of defendant's dolls literally infringe Claim 8.

### (C) Means for Closing the Mouth Opening.

Both ·Claim 1 and Claim 8 of the Senior patent call for "means for closing the mouth opening". The means for closing the mouth opening in defendant's old doll is similar to that employed in the doll of Ideal Toy Corporation which was held to infringe Claims 1 and 8 of the Senior patent in Brock v. Brown, supra. Senior had suggested "a closure plug, e. g. in the form of a comforter in the mouth of the doll," but Claims 1 and 8 were not so limited. In the Ideal doll the means for closing the mouth opening was a ball valve located just inside the mouth in the conduit leading from the mouth to the liquid container (tear reservoir). The Fourth Circuit said: "The use of the stop valve construction is a minor variation dictated by commercial design considerations and does not avoid infringement." 240 F.2d at page 728. The ball valve in defendant's old doll is the same type of construction and has the same function as the ball valve in the Ideal doll. Instead of being located in the conduit from the mouth to the liquid container at a point just inside the mouth, defendant's ball valve is located at the container end of this conduit. But, as in the Senior patent and in the Ideal doll, defendant's ball valve serves the purpose of closing the mouth opening to prevent the escape of air under pressure, and therefore responds literally to the relevant term of Claim 1 and of Claim 8. If there is any doubt about the matter, it is removed by the doctrine of equivalents.

In defendant's new dolls No. 1 and No. 2 there is a constriction in the conduit leading from the mouth to the liquid container (tear reservoir). That constriction reduces the amount of air which escapes through the mouth opening when the doll is squeezed (so that the necessary amount of pressure is preserved), but does not prevent all the air from escaping. Senior teaches closing the mouth opening "in a more or less air-tight fashion". Claim 8 of the Senior patent makes it clear that the purpose of the "means for closing the mouth opening" is "to permit the discharge of liquid from said container through the openings at the eyes by compressing the torso of the doll." The closing of the mouth opening need not be complete to accomplish this purpose. It need only be sufficient to restrict the escape of air through the mouth, so that enough air pressure is built up in the liquid container to force the liquid to the eyes. The constriction of the conduit leading to the mouth opening in defendant's new dolls provides such a sufficient closure; it has the same function, operates in the same way, and produces the same result as the comforter suggested by Senior, which in practice would permit some air to escape through the mouth opening.

Weiss v. R.· Hoe & Co., Inc., 2 Cir., 109 F.2d 722, 726, certiorari denied 310 U.S. 639, 60 S.Ct. 1085, 84 L.Ed. 1407, is directly in point. That case involved a patent for a printing press with an air tight housing. Defendant sought to avoid infringement on the ground that its press had some small spaces which prevented it from being air tight. The Court held that an "air tight housing" does not require "a closure absolutely air tight" and that defendant's press was sufficiently air tight to operate according to the same principle as the invention in suit and, therefore, infringed.

See also Stubnitz-Greene Spring Corp. v. Fort Pit Bedding Co., 6 Cir., 110 F.2d 192; Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 115 F.2d 958; Frick Co. v. Lindsay, 4 Cir., 27 F.2d 59, 62.

### File Wrapper Estoppel

Defendant contends that "even if it is found that defendant's dolls contain elements which may be regarded as equivalents of the elements specified in Claims 1 and 8, plaintiff is estopped to claim the benefit of such equivalents by reason

of the proceedings in the Patent Office which led to the issuance of the patent in suit".

First, as to Claim 1. Senior's eight original claims were entirely too broad, and did not state his invention. As originally drawn they would have covered dolls which operated on basic principles entirely different from Senior's invention. Senior therefore cancelled the first six claims, amended claims 7 and 8, and added claims 9, 10 and 11. These claims also were very broad and the Examiner rejected them on several grounds, "the most significant of which", as defendant noted in its first brief, was the following:

"Claims 7 to 11 are rejected as indefinite in that they fail to particularly point out and distinctly claim the invention. It appears that the position of the tubes within the container must be set forth to properly claim the invention. From the specification and drawings it appears that for the device to be operative the 'container' must be in an upright position, must be rigid so that it will not collapse under an increase of internal doll body air pressure, and the container must be air tight so as to allow the tubing to act as the only flow ports, and the 'open ended air tube' must be in a vertical plane so that the tear tubing will be beneath the liquid level and the open ended air tube above the liquid level. The present claims do not contain these limitations."

In response to this action, Senior cancelled claims 7 to 11 and substituted claims 12 to 17. Claim 12 became claim 1 of the patent as issued. It is set out in note 1 above. By those amendments Senior did not give up anything which he is now seeking to recover as an equivalent.

Defendant argues: "Senior must be held to have abandoned all that is embraced in the difference between 'tubing connecting said tear openings with the interior of the liquid container' and 'liquid conducting tubing connected to said tear openings and projecting downwards into said container'. Likewise, Senior must be held to have abandoned all that is embraced in the difference between 'a second tube opening into said liquid container' and 'an air tube projecting upwards into said container and terminating, in the interior of said container, above the lower termination of said liquid conducting tubing'."

As we have seen, defendant's old doll (the only one accused of infringing claim 1 of the patent) does contain an air tube (overflow conduit) projecting upwards into the container and terminating, in the interior of said container, above the inner termination of the eye tubing, and the eye tubing does project *into* the container. The presence of the word "downwards" in claim 12 (now claim 1) does not prevent plaintiffs from maintaining that defendant's eye tubing is the equivalent of that called for by that claim. Defendant seeks to isolate a single phrase, and contends that it represents a limitation on the claim which cannot be avoided by the doctrine of equivalents. The phrase, however, must be considered in context. The Examiner did not require that the eye tubing project *downwards* into the container. Nor was this significant in avoiding the prior art. The Examiner did require that "the position of the tubes within the container must be set forth to properly claim the invention," and indicated what that position must be. Senior met that requirement by providing in claim 12 (claim 1 of the patent) that the inner end of the air tube (overflow conduit) should terminate, in the interior of the container, above the inner end of the eye tubing.

 The doctrine of file wrapper estoppel applies only where by amendment of the claims in the Patent Office the patentee gives up an element by reason of prior art which is later sought to be recaptured. File wrapper estoppel bars recourse to the doctrine of equivalents in cases where the patentee attempts to secure through equivalents what has been rejected by the Patent

Office. "When claims are rejected and withdrawn while an invention is pending in the Patent Office the patentee is estopped to contend that the allowed claims should be given the same breadth and interpretation as the abandoned claims." Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550, 563. See Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 221, 61 S.Ct. 235, 85 L.Ed. 132; Exhibit Supply Co. v. Ace Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736. When an amendment is made to meet an examiner's objection, the applicant proclaims his abandonment of all that is embraced in the difference between the original and the amended claim. Carter Products, Inc. v. Colgate-Palmolive Co., D.C.D.Md., 164 F.Supp. 503, 519. This rule of estoppel is not applicable in the case at bar because the file wrapper for the Senior patent shows that the patentee did not give up any element of his combination to meet any objection of the Patent Office examiner and did not surrender any coverage which is here sought to be recaptured under the doctrine of equivalents.

The principles which control the instant case were set out and applied by the Fourth Circuit in Binney & Smith Co. v. United Carbon Co., 125 F.2d 255, 259 (reversed on other grounds not bearing on file wrapper estoppel at 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232):

"Nor are we impressed with the contention that the claims covering this new and useful product are to be given a narrow or limited construction because other broad claims were disallowed by the patent office and later abandoned. The rule is well settled, of course, that claims allowed may not be construed so as to cover broader claims which have been rejected and abandoned. Doughnut Machine Corp. v. Joe Lowe Corp., 4 Cir., 67 F.2d 135,

138. This does not mean, however, that the language of a claim is to be denied its ordinary meaning because another claim containing somewhat similar language has been rejected. The abandoned claims were rejected because 'so broad that the product might be quite different' from that of patentees and as not properly defining appellant's invention. Whether they were thought broad enough to include a pellet made with a binder or not, certain it is that the claims allowed adequately describe the product, which should not be denied protection because other and broader claims, thought not to describe it adequately, have been rejected. It is worthy of note that none of the citations upon which the rejections were based disclosed anything like the product of the patent."

Defendant now argues that the limitations were placed in claim 12 to distinguish that claim from the Gilbraith patent, U.S. No. 2,196,912. Gilbraith provided a small water container in the head of the doll from which water descended by gravity to the eyes.[3] That small container was fed by and from a bulb, which had to be so placed in the body of the doll that there was a wall against which the bulb could be squeezed. 240 F.2d at page 726. The Gilbraith doll operated (if indeed it ever operated at all) on an entirely different principle from that taught and claimed by Senior.

It is true that the examiner referred to Gilbraith in rejecting claims 1 to 11 of Senior. But, as we have seen, the new claims were filed to meet the "most significant" of the examiner's objections, namely, that the old claims were "indefinite", that they did not "particularly point out and distinctly claim the invention" in that the "position of the tubes within the container" were not set forth. The new claims were not filed to distin-

3. Defendant's expert attempted to demonstrate at the trial that its dolls would also operate by gravity, but failed in his attempt. As the instructions defendant supplies with its dolls indicate, it is nec-essary to squeeze the body of defendant's dolls in order to start the flow of tears. They operate upon the principle taught by Senior, not the principle taught by Gilbraith.

guish Gilbraith.[4] Referring to Gilbraith, Senior said:

"Turning now to the references, it is respectfully urged that the weeping mechanism of Gilbraith and Pages is not the equivalent of that in the present invention, as set forth in the claims now in the case. In both references the expulsion of liquid to the tear ducts is effected by compression of the reservoir itself, which entails that this reservoir must be flexible-walled, and that it must be accessible for squeezing.

"In the doll of the present invention the pressure on the liquid is engendered *outside* the reservoir and applied to the surface of the liquid in the latter. This entails that the reservoir walls shall be rigid and air-tight (as has now been made clear in the claims as the Examiner requests), and presents the following advantages:

"(a) that the reservoir can be disposed anywhere in the interior of the doll body since it does not have to be engaged by the fingers.

"(b) that the manufacturing complication of securing the reservoir to, or forming it as part of, a wall of the doll body is avoided.

"(c) that control of the volume of 'tears' by the user is more precise, not depending for example on the part at which the exterior of the body is gripped."

Senior maintained this position, and claim 12 became claim 1 of the Senior patent as issued. At no time during the prosecution of the application for the Senior patent did the Patent Office ever reject any claim which fixed the lower termination of the eye conduits in the liquid container below the lower termination of the air tube (overflow conduit). Nor was any claim rejected or amended in connection with "means for closing the mouth opening".

Defendant's contention with respect to claim 8 is also without merit. Claim 8 of the Senior patent was originally claim 5 of the Beebe application. For a discussion of the Senior-Beebe interference and Beebe's assignment to Senior see 138 F.Supp. at pages 630, 631, and 240 F.2d at page 725. Defendant contends that Beebe, to distinguish his claim from Gilbraith, construed his claim in a manner which distinguishes it from defendant's dolls. I have examined the file wrappers in both the Senior and the Beebe applications, and find no basis for this contention. Defendant's argument is based upon a misconstruction of a part of Beebe's statement, which pointed out clearly the important differences between Gilbraith's patent and Beebe's claims 4 and 5. Claim 5 (claim 8 of the Senior patent) was allowed with a minor amendment, not relevant here.

## Conclusion

■ Defendant's old doll infringes claims 1 and 8 of the Senior patent. Both of defendant's new dolls infringe claim 8 thereof.

4. Defendant's contention that Gilbraith anticipated Senior is based upon a reconstruction of Gilbraith, reminiscent of the defendant's rearrangement of the Pages' French Patent in Brock v. Brown, which the Fourth Circuit noted would be "a complete departure from Pages' patent". 240 F.2d at page 726. The fallacy of defendant's argument in the case at bar lies in the fact that Gilbraith does not teach an air tube (overflow conduit) terminating in the container above the inner end of the eye tubing, and forcing water to the eyes by air pressure created by squeezing the doll's body. A tiny hole which Gilbraith placed in the top of his small tear container would not assist in forcing water from the bulb to the eyes via the small tear container, and Gilbraith did not suggest that it was there for that purpose.