**POWER CURBERS, INCORPORATED,**
Plaintiff

v.

**E. D. ETNYRE & COMPANY and A. E. Finley & Associates, Incorporated,**
Defendants.

**Civ. No. 1196.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Oct. 14, 1960.

Eaton, Bell, Hunt & Seltzer, Charlotte, N. C., Kluttz & Hamlin, Salisbury, N. C., for plaintiff.

Parrott & Richards, Charlotte, N. C., Wolfe, Hubbard, Voit & Osann, Chicago, Ill., for defendants.

WARLICK, District Judge.

This is a patent action in which infringement of claims 1, 3, and 4 of patent No. 2,707,422 is charged. This patent was issued on May 3, 1955 for a Curb Laying Machine to plaintiff as the assignee of the inventor, William E. Canfield. The evidence was heard by the court without a jury. The defenses interposed by the defendant are the usual ones of invalidity and noninfringement.

Plaintiff seeks a permanent injunction as against both defendants and damages from the defendant Etnyre.

Following the hearing of the cause I find the following facts and make my conclusions of law:

### Findings of Fact.

Plaintiff, Power Curbers, Inc., is a North Carolina corporation having its principal place of business at Salisbury in the Middle District of North Carolina. Plaintiff corporation was expressly formed for the purpose of manufacturing and selling the machine set out in the Canfield Patent, No. 2,707,422.

The defendant E. D. Etnyre and Company is a corporation duly organized under the laws of the State of Illinois and has a place of business in that state and another at Everette, Massachusetts. It is engaged in the business of manufacturing and selling, throughout the United States, road construction machinery such as bituminous distributors, tanks for transporting road materials, sprinklers, and other machinery of a comparable character.

A. E. Finley and Associates, Inc., is a corporation organized under the laws of North Carolina and has places of business at Charlotte and Raleigh, and is the distributor and sales agent in North Carolina for the machinery manufactured by the defendant E. D. Etnyre and Company.

This action arises under the patent laws of the United States.

Plaintiff, Power Curbers, Inc., is the owner of the entire right, title and interest in and to U. S. letters patent No. 2,707,422, and has been at all times since such patent was issued on May 3, 1955. The application for such patent was filed on February 16, 1953.

The defendant, Etnyre, is charged by plaintiff with infringement of the Canfield patent by reason of its manufacture and sale of the designated Etnyre Curb Paving Machine. The defendant Finley is charged with infringement of the Canfield patent by reason of its sale of the so-called Etnyre Curb Paving Machine.

The patent in suit relates to a machine for laying curb in place. The machine combines the operations of material compaction, extrusion, shaping, finishing, and retaining the finished curb in a self-contained, self-propelled unit, which is fully adjustable to lay in place on the surface of the roadway high quality asphalt or cement curb of uniform compaction, and cross-section.

The Canfield invention combines for its purpose as so described, an adjustable wheeled frame carrying a hopper, a material compacting and extruding device, an open bottom, elongated, curb mold connected directly to the end of the extrusion device. The extrusion device comprises a pressure rising chamber or pipe extending between the hopper and the mold and having a driven screw therein. The pipe and screw serve to convey material from the hopper to the mold while building up pressure or energy in the material to compact it and then force it under pressure out through the end of the pipe which serves as a die.

The elongated mold which is connected directly to the die end of the pipe is larger than the pipe and the built up pressure or energy causes the material to spread out in the front portion of the mold and to be shaped into the configuration of the mold. As the machine moves forwardly the rear portion of the mold serves to confine the shaped curb against the ground surface to form an abutment while at the same time, smoothing and finishing the surface of the curb being formed.

It further operates on the theory that the reactive force of the material being extruded, shaped, and formed against the curb abutment confined on the ground causes the machine to be propelled forwardly at a rate of travel directly proportional to the amount of paving material forced into the mold.

The idea for a curb laying machine occurred to W. E. Canfield an employee of the State Highway Department of North Carolina in August, 1951. North Carolina in its road construction had for some time been stepping up its use of curbing for directing traffic through the use of channel islands and other engineering projects, and this use obviously pointed up the problems involved in curb

laying,—which was necessarily a slow and expensive project and the progress of the Highway building had been materially slowed through the years on that account. Until the Canfield idea came into being stationary forms were used for cement curbs,—granite on occasion was used,—but asphalt curbs were relatively unknown in view of the virtual impossibility up until this time of achieving a satisfactory result.

After several attempts to produce a workable machine Canfield, in May of 1952, completed a machine which was found capable of satisfactorily laying both cement and asphalt curbing. Following a demonstration which proved highly successful certain machines based on the Canfield process, as disclosed in the patent in suit, were used during the months of May through October 1952, by the North Carolina State Highway Department to form many curbs and traffic islands over the entire North Carolina Highway System. In 1953 plaintiff began the general manufacture and sale of machines based on the ideas embraced in the Canfield patent. Subsequently sales became not only nationwide but many were sold in foreign countries. Trade journals and magazines, many of those in which Etnyre regularly advertised its products, carried advertisements of the Canfield machine, and set forth its claims and results.

The Canfield machine has many advantages and brought about many new and improved results. It provided, for the first time, mechanized curb laying eliminating the need for expensive forms and the hand labor required with such forms. The Canfield invention is a pioneer invention. The machine is simple in construction, inexpensive, easy to operate, adaptable to various terrain surfaces and grades, and permits use of various curbing materials. It is fully adjustable to lay well aligned curb, both straight and curved, without tracks or forms. It provides controlled, uniform compaction of material and density of finished curb without voids or honeycombs. It permits use of a wide variety of curb shapes and eliminates the need for hand finishing. The machine lays curbing of higher quality, faster and at a lower cost than was possible prior to its invention.

During the trial plaintiff and the defendants received permission to bring into the court room their respective curb laying machines and offered them in evidence, thereby enabling the court to inspect each machine and to have pointed out their various parts and functions. Additionally the plaintiff offered in evidence a miniature working model made to scale of the Canfield patent, and using a type of adhesive material with sand instead of cement or asphalt, laid miniature curbs, both straight and curved, from the materials used. It was an amazing operation, and unquestionably would impress anyone with the realistic manner in which the machine performed the functions claimed for it. In fact its operation was well nigh perfect and surely gave one an impression of its value and worth. This demonstration readily accounted for the commercial success of the plaintiff's machine.

The opportunity given me to see and inspect the actual machine made on the patent in suit and to have its functions explained, and my ability to observe the miniature machine actually operate, gave me a much fuller opportunity and a more positive knowledge of the machine, its parts and functions. In the language of the layman, it operates from a mixture of cement or asphalt being poured into the hopper, which drops it into the pipe where a screw compacts it while at the same time conveying it toward the open end of the pipe which is directly connected to a mold where the mixture is deposited. The mold is U-shaped, being open at both ends and open facing the surface of the roadway. As the mixture leaves the pipe under force it fills up the front of the mold where the shaping takes place and as the machine moves forward the balance of the mold finishes the curb. After the mold is full the machine propels itself forward directly proportioned to the amount of the concrete or asphalt mixture supplied to the hopper.

This patent in suit not only claims but actually discloses a new combination of elements functioning together in a new way and which unquestionably produces new and outstanding results; from which I am of the opinion and so find that the Canfield invention taken as a whole would not have been obvious to a person having ordinary skill in the art of paving apparatus.

The defendants who make common cause, though filing separate answers, set up three separate and distinct defenses as against the claims alleged by the plaintiff, and under ten specific subsections, set forth in their first defense every conceivable defense relating to the invalidity of the patent. It would hardly appear necessary or worthwhile to elaborate on these specific allegations other than to state that they are those consistently and invariably found in the usual defenses interposed in patent actions; and further allege that they are not in any wise infringing said letters patent No. 2,707,422.

Each further sets out as a defense that plaintiff is estopped by reason of the proceedings had and taken in the Patent Office in the prosecution of the application for the letters patent herein, from maintaining that such letters patent are of such scope as to cover or embrace any device or article manufactured or sold by defendant Etnyre.

And generally in the three separate defenses that the complaint fails to state a claim against the defendants upon which relief can be granted.

The defendant Etnyre began manufacturing and selling the accused machine known as the Etnyre Curb Paving Machine in June of 1955, and the machine exhibited in the court room and offered in evidence was one among those manufactured by it. That in early January of 1955 Etnyre had received a good deal of literature fully describing the Canfield machine and indicating that a patent therefor had been filed and that such was pending in the Patent Office and through other means was fully acquainted with the Canfield machine. In April 1955 certain attorneys representing the defendant Etnyre wrote plaintiff seeking to obtain further information about the patent herein. Subsequently the defendant Etnyre was advised by plaintiff that the Canfield Patent had issued to it on May 3, 1955 and Etnyre was warned not to infringe. Later in October 1955 Etnyre sought to obtain a license but after lengthy negotiations its request for such was denied by plaintiff.

Since that time and up to the time of the trial some several hundred of the defendant's machines have been manufactured and sold.

The defendant Etnyre's machine is substantially larger than the machine manufactured by plaintiff under the patent in suit, and appears to have essentially the same mechanical elements disclosed in and claimed by the Canfield patent, and evidently operates in the same manner and produces identically the same results. It appears more cumbersome and yet being considerably larger contains approximately the same size elements and is practically identical except as to size. It does, however, contain several additional elements,—one being a heated jacket for the mold, but none, from the description given and the results obtained, add materially if at all to the usefulness of the machine or the purpose for which it was intended, or the results achieved.

These findings are made by me from the evidence heard, and the statements outlined,—but in a large measure from a study of the machines, both of which yet remain in the jury room at Charlotte and where such study could be and was had. The working elements of the defendant's machine are almost a spit image of plaintiff's machine, made under the patent in suit, and must have been literally copied and produced, and only varied so as to become confusing.

Defendants rely upon thirteen patents and one publication in support of their contentions that the claims of the patent in suit are invalid.

Seven of these patents were considered by the Patent Office during the prosecution of the application for the patent herein; and none of the additional prior arts, patents or the publication disclose anything more pertinent than the seven patents considered by the Patent Office. Certainly none other than the McIntyre patent No. 817,383 could be considered in the slightest as disclosing anything pertinent. The McIntyre patent being one considered and cited by the Patent Office infers that the device shown might be used for curb laying but does not teach any means which modify the device so as to accomplish such result. This patent shows a rather crude impractical arrangement and actually shows only one element,—the hopper, which is in any wise comparable to the Canfield patent. A study reveals that it is a far cry from what is contained in the claims of the patent in suit. The other six patents all considered by the Patent Office relate either to a shape making machine or other circumstances which in no wise compare to the Canfield patent. It clearly is made to appear that none of these patents could be operated in any wise to lay curb. None were ever marketed, sold, put into public or commercial use, or operated for any of the purposes stated in the patents.

Conclusions of Law.

This court has jurisdiction of the parties to this action and the subject matter involved.

■■■ I find that the features in this patent constitute a new combination and arrangement and produce new and beneficial results never before obtained. I conclude that Patent No. 2,707,422 is good and valid in law and providing new and unobvious results is patentable. Loom Co. v. Higgins, 105 U.S. 580, 591–592, 26 L.Ed. 1177; Colgate-Palmolive Co. v. Carter Products Inc., 4 Cir., 230 F.2d 855, 862; United States Industrial Chemical Co. v. Theroz Co., 4 Cir., 25 F.2d 387, 391; Brown v. Brock, 4 Cir., 240 F.2d 723.

■■■ Having found that Patent No. 2,707,422 is valid, the question of infringement does not present too much difficulty, for that as the findings of fact indicate, the Etnyre Curb Machines contain all of the essential elements of the Canfield machines,—cooperating in the same manner to produce the same results, and that such machines infringe claims 1, 3, and 4 of the patent in suit.

"It is well established that the test of infringement is whether the accused device does the same work in substantially the same way and accomplishes the same result. Nordberg Mfg. Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685, 692; Sanitary Refrigerator Co. v. Winters, et al, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147. As recently stated by the Supreme Court, ' * * * "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." * * * ' Graver Tank & Mfg. Co., Inc. et al v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856 [94 L.Ed. 1097].

"An infringement is not avoided by a mere reversal or transposition of parts or a mere change in form without change in function. Chicago Lock Co. v. Tratsch et al, 7 Cir., 72 F.2d 482, 485." Hunt v. Armour & Co., 7 Cir., 185 F.2d 722, 728.

In the decree to be entered it will be adjudged that plaintiff recover its damages of the defendant E. D. Etnyre & Company, for all amounts which it has received arising from the infringement of plaintiff's patent, all as is determined by a properly held accounting.

That the defendants and those acting for them as agent, servants, and employees be enjoined from further infringement of plaintiff's patent and that a permanent injunction issue herein.

That the plaintiff recover of the defendants the costs of this action, to include attorney fees.

Counsel will submit decree.